[No. D060849. Fourth Dist., Div. One. Nov. 20, 2012.]

DOUGLAS E. BARNHART, INC., Plaintiff and Respondent, v.
CMC FABRICATORS, INC., Defendant and Appellant.

COUNSEL

Maureen Doyle for Defendant and Appellant.

Marks, Finch, Thornton & Baird, Jeffrey B. Baird, Christopher R. Sillari and Daniel P. Scholz for Plaintiff and Respondent.

OPINION

**IRION, J.**—In this appeal from an order denying a motion for an award of attorney fees, we must decide whether a defendant who defeats a claim for breach of contract but loses a related claim for promissory estoppel is entitled to recover attorney fees when the alleged contract provides the prevailing party in any dispute between the parties shall recover such fees. We hold such a defendant is entitled to recover the attorney fees reasonably incurred in defeating the breach of contract claim. We therefore reverse the trial court's order and remand for further proceedings.

I.

BACKGROUND

In preparing a bid for construction of a municipal library, Douglas E. Barnhart, Inc. (Barnhart), a general contractor, solicited bids from subcontractors for certain decorative metalwork. CMC Fabricators, Inc. (CMC), submitted a bid for the metalwork dated November 5, 2005. CMC's bid provided it would "remain in force for thirty days from the above date unless accepted by [Barnhart] or withdrawn by [CMC]," and contained a space for Barnhart to indicate acceptance by signature. Although Barnhart never signed CMC's bid, it used CMC's price in preparing its own bid for the library project.

On December 14, 2005, Barnhart sent CMC a letter of intent that included price and scope-of-work terms that differed from those of CMC's bid. Six days later, Barnhart sent CMC a proposed subcontract containing these altered terms. CMC did not sign Barnhart's proposed subcontract and, months later, sent its own proposed subcontract to Barnhart with terms consistent with those of CMC's original bid. Barnhart never signed CMC's proposed

subcontract and, with the municipality's permission, substituted a new sub-contractor to do the decorative metalwork for the library.

Barnhart sued CMC on theories of breach of contract and promissory estoppel for $66,110, the amount in excess of CMC's bid that it had to pay the substitute subcontractor for the decorative metalwork. In its breach of contract cause of action, Barnhart alleged that CMC offered to perform the decorative metalwork for the price specified in its November 5, 2005 bid; that Barnhart accepted the offer; that a contract resulted; and that CMC refused to perform the work. In the promissory estoppel cause of action, Barnhart alleged that CMC submitted the November 5, 2005 bid to perform the decorative metalwork; that Barnhart foreseeably and reasonably relied on the bid in obligating itself to construct the municipal library; that CMC refused to honor the bid; and that injustice could be avoided only by enforcing the bid. Barnhart attached a copy of CMC's bid to the complaint and incorporated its terms by reference into both the breach of contract and the promissory estoppel claims. Barnhart also asserted a cause of action to recover $7,500 against CMC's contractor's bond under Business and Professions Code section 7071.5, subdivision (c), based on CMC's "willful failure to prosecute work with reasonable diligence." In its complaint, Barnhart requested damages, interest and costs.

CMC filed an answer asserting a general denial and several affirmative defenses. It requested a judgment for costs and attorney fees.

After a bench trial, the court found Barnhart and CMC never entered into a contract and on that basis rejected Barnhart's breach of contract and contractor's bond claims. The court also found "Barnhart relied to its detriment on CMC's proposal, submitted its bid to the [municipality], and suffered actual damages compensable under the principles of promissory estoppel." The court awarded Barnhart $21,111 on its promissory estoppel claim and entered judgment accordingly.

CMC subsequently moved for an award of $150,484.77 in attorney fees based on the following provision of its November 5, 2005 bid: "In the event of any dispute that arise[s] between the parties, the prevailing party shall recover, in addition to any other damages, its attorney's fees and costs incurred in litigating or otherwise settling or resolving such dispute." Relying on Civil Code section 1717 and interpretive case law, CMC argued that because it defeated Barnhart's breach of contract claim, it was " 'the party prevailing on the contract' " and was therefore entitled to recover attorney fees as a matter of law.

Barnhart opposed CMC's attorney fees motion. Barnhart argued CMC was not entitled to any attorney fees because (1) CMC did not prove the contract

Barnhart sued on—"an oral or implied contract apart from [CMC's bid]"—contained an attorney fees provision and (2) Barnhart, having been awarded monetary relief on its promissory estoppel claim, was the party prevailing on the contract. Barnhart also argued the amount of fees CMC claimed was unreasonable.

The trial court denied CMC's motion for an award of attorney fees. In its order, the court stated Barnhart had prevailed on its promissory estoppel claim "and therefore received the net monetary award and achieved its objecti[ve]s in litigation." Citing a portion of CMC's briefing in which CMC argued attorney fees should not be apportioned because in defending against all the elements of Barnhart's breach of contract claim it necessarily defended against all the elements of its promissory estoppel claim, the court stated the parties had agreed "a cause of action for promissory estoppel is essentially a cause of action for breach of contract."[1] The court further stated Barnhart's promissory estoppel claim "was based on [CMC's b]id and therefore[] was an action that involved the contractual terms of the [b]id." In accordance with these statements, the court ruled Barnhart was the party prevailing on the contract, and CMC was not entitled to recover any attorney fees.

## II.

## DISCUSSION

CMC seeks reversal of the trial court's order denying its request for attorney fees. CMC asserts a right to an award of attorney fees under the express terms of its decorative metalwork bid, which CMC claims Barnhart sought to enforce as a contract. According to CMC, "its unqualified 'win' against . . . Barnhart on Barnhart's . . . cause of action for breach of a written contract, the only contract cause of action between the parties," makes CMC "the party prevailing on the contract" entitled to fees as a matter of law. (Civ. Code, § 1717, subd. (a); undesignated section references are to the Civil Code.)

Barnhart counters that the trial court's order should be affirmed. Barnhart contends its breach of contract claim was based not on CMC's bid or any other "specific written document," but on "proposed form subcontracts" "the terms of which were uncertain due to ongoing disputes between Barnhart and CMC." "Without a defined, express written contract," the argument continues, there is no basis for an attorney fees award. Alternatively, Barnhart argues it

---

[1] CMC emphatically denies the existence of such an agreement: "From CMC's first appearance through to the trial court proceedings, . . . CMC never conceded that [Barnhart's] breach of contract or promissory estoppel causes of action were the same or had any merit."

was the "party prevailing on the contract" (§ 1717, subd. (a)) because it "prevailed on its promissory estoppel claim, which was contractual in nature, and therefore recovered a greater relief in the action on the contract."

This appeal thus requires us to resolve two issues: (1) whether there is a contractual basis for an award of attorney fees and, if so, (2) whether CMC or Barnhart was "the party prevailing on the contract" (§ 1717, subd. (a)) entitled to recover its attorney fees.

A. *The Alleged Contract Authorizes the Prevailing Party in Litigation to Recover Attorney Fees*

■ We first must determine whether there is a legal basis for an award of attorney fees. California follows the "American rule," under which each party to a lawsuit must pay its own attorney fees unless a contract or statute or other law authorizes a fee award. (Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10); *Musaelian v. Adams* (2009) 45 Cal.4th 512, 516 [87 Cal.Rptr.3d 475, 198 P.3d 560].) "On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law." (*G. Voskanian Construction, Inc. v. Alhambra Unified School Dist.* (2012) 204 Cal.App.4th 981, 995 [139 Cal.Rptr.3d 286].)

■ The only basis for an attorney fees award asserted in this case was contractual: CMC requested attorney fees under the clause in its November 5, 2005 bid entitling the "prevailing party" to recover such fees in "any dispute that arise[s] between the parties." Section 1717 governs attorney fees awards authorized by contract and incurred in litigating claims sounding in contract. (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 523 [141 Cal.Rptr.3d 834] (*Frog Creek*); *Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 310 [128 Cal.Rptr.3d 772].) Under that statute, when a contract provides for an award of fees "incurred to enforce that contract," "the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees . . . ." (§ 1717, subd. (a).) "The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610 [71 Cal.Rptr.2d 830, 951 P.2d 399] (*Santisas*).) Thus, "when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees *whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed.*" (*Santisas*, at p. 611, italics added.)

Here, had Barnhart proved its breach of contract claim, it would have been entitled to an award of attorney fees under the express terms of the contract it

sued on. In its cause of action for breach of contract, Barnhart incorporated by reference the terms of CMC's November 5, 2005 bid and alleged that the bid constituted an offer, which Barnhart accepted to form a contract. That bid, as noted, contains a clause authorizing "the prevailing party" in litigation to recover its attorney fees. Accordingly, had Barnhart recovered for breach of contract, it would have been "entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).)

Barnhart did not prevail on its breach of contract claim, however. The trial court found "no contract was ever entered into between Barnhart and CMC on the library project." Thus, under the mutuality of remedy imposed by section 1717, CMC would have a legal right to recover the attorney fees it incurred in "establishing that the contract is . . . nonexistent" (*Santisas, supra*, 17 Cal.4th at p. 611), provided CMC was "the party prevailing on the contract" (§ 1717, subd. (a)), i.e., the party obtaining "greater relief" on all the contract claims in the action (*id.*, subd. (b)(1); see *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [39 Cal.Rptr.2d 824, 891 P.2d 804] (*Hsu*)).

Barnhart tries to escape the effect of section 1717 by arguing it did not sue to enforce the terms of CMC's November 5, 2005 bid. According to Barnhart, its "contract claim was based on CMC's alleged breach of the CMC Subcontract," which was not a "specific written document" but an agreement "the terms and conditions of [which] 'were to be memorialized in a more formal agreement.' " Barnhart thus argues: "Because there were no definite terms to the CMC Subcontract, and no contract was found to exist, there is no evidence that the CMC Subcontract as alleged and pursued by Barnhart provided for attorneys' fees." We reject this disingenuous argument, which borders on frivolous.

As we earlier explained, Barnhart attached a copy of CMC's November 5, 2005 bid to its complaint, and in the charging allegations of its breach of contract cause of action, it incorporated by reference the bid's terms, which include an attorney fees clause. Barnhart specifically alleged that the "[b]id constituted an offer" and that "Barnhart accepted the [b]id *and a contract was formed ('CMC Subcontract')*." (Italics added.) Barnhart further alleged the "essential terms" of the contract included the price and scope-of-work terms contained in CMC's bid. Nowhere in its complaint did Barnhart describe any specific document other than the bid, no document besides the bid was attached to the complaint, and the complaint was never amended. Thus, although Barnhart also alleged "[t]he CMC Subcontract terms and conditions were to be memorialized in a more formal agreement, namely, Barnhart's standard form subcontract," the terms of the alleged "CMC Subcontract" that Barnhart sought to enforce against CMC were necessarily those of CMC's November 5, 2005 bid *because Barnhart defined the "CMC Subcontract" as the contract formed by acceptance of that bid.*

We therefore conclude that "[h]aving elected to proceed with [its] breach of contract theory, [Barnhart] assumed the burdens of invoking that contract's attorneys fees clause. Upon losing that claim, [Barnhart may] now [be] liable pursuant to the reciprocity established by Civil Code section 1717." (*Korech v. Hornwood* (1997) 58 Cal.App.4th 1412, 1422 [68 Cal.Rptr.2d 637]; see *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [51 Cal.Rptr.2d 286] ["Since it is undisputed that [the plaintiff] would have been entitled to fees if he had been a prevailing party, there is no question that he is liable for fees as a losing party."].)

## B. *CMC Was the Party Prevailing on the Contract*

We next must determine whether CMC or Barnhart was "the party prevailing on the contract." (§ 1717, subd. (a).) Section 1717 "vests the trial court with discretion in making the prevailing party determination." (*Hsu, supra,* 9 Cal.4th at p. 871.) "[W]e will not disturb the trial court's determination absent 'a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.' " (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1539 [93 Cal.Rptr.3d 864].)

Section 1717 provides in pertinent part: "(a) In any action *on a contract,* where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing *on the contract,* whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.) With exceptions not applicable to this case, "the party prevailing on the contract shall be the party who recovered a greater relief *in the action on the contract." (Id.,* subd. (b)(1), italics added.)

The determination of the party prevailing *on the contract* for purposes of awarding attorney fees under section 1717 must be made independently of the determination of the party prevailing *in the overall action* for purposes of awarding costs under Code of Civil Procedure section 1032. (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 438–439 & fn. 1 [147 Cal.Rptr.3d 157] (*Zintel Holdings*); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491 [54 Cal.Rptr.2d 888].) The prevailing party determination under section 1717 must be based on the results of the litigated contract claims, "without reference to the success or failure of noncontract claims." (*Hsu, supra,* 9 Cal.4th at pp. 873–874; accord, *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 358 [84 Cal.Rptr.3d 38] (*Dintino*).) "When a party obtains a simple, unqualified victory by completely prevailing on or defeating *all contract claims in the*

*action* and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims. [Citation.] If neither party achieves a complete victory *on all the contract claims*, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 [86 Cal.Rptr.2d 614, 979 P.2d 974], italics added.) Hence, "the party who obtains greater relief on the contract action is the prevailing party entitled to attorney fees under section 1717, *regardless of whether another party also obtained* lesser relief on the contract or *greater relief on noncontractual claims*." (*Frog Creek, supra*, 206 Cal.App.4th at p. 531, italics added.)

Here, the overall results of the litigation were mixed. Barnhart prevailed on its promissory estoppel claim and recovered a judgment for $21,111 against CMC. CMC defeated Barnhart's claims for breach of contract and for recovery against CMC's contractor's bond, on the ground that CMC and Barnhart never entered into a contract. If the breach of contract and contractor's bond claims were "the *only* contract claim[s] in the action" (as CMC argues), then CMC "is the party prevailing on the contract under section 1717 *as a matter of law*." (*Hsu, supra*, 9 Cal.4th at p. 876, italics added.) If, however, a promissory estoppel claim is a contract claim (as Barnhart argues and the trial court ruled), then the court had discretion to determine the prevailing party "by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Ibid.*) The dispositive issue, then, is whether a claim based on a theory of promissory estoppel is a claim "on a contract." (§ 1717, subd. (a).)

The parties have not cited, and we have not found, any published California case that has decided whether a promissory estoppel action is an "action on a contract" within the meaning of section 1717. We therefore look for guidance to cases interpreting and applying the quoted phrase in the context of other types of actions.

■ "California courts construe the term 'on a contract' liberally." (*Turner v. Schultz* (2009) 175 Cal.App.4th 974, 979 [96 Cal.Rptr.3d 659] (*Turner*).) The phrase "action on a contract" includes not only a traditional action for damages for breach of a contract containing an attorney fees clause (e.g., *Jones v. Drain* (1983) 149 Cal.App.3d 484, 487–488 [196 Cal.Rptr. 827]), but also any other action that "involves" a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the action (e.g., *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 486 [70 Cal.Rptr.3d 9] (*Mitchell*)). "In determining whether an action is 'on the contract' under section 1717, the proper

focus is not on the nature of the remedy, but on the basis of the cause of action." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 [85 Cal.Rptr.3d 532] (*Kachlon*).)

Employing this approach, courts have held the phrase "action on a contract" as used in section 1717 includes an action seeking declaratory and injunctive relief to enforce a consent decree (*In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1601 [124 Cal.Rptr.3d 352]) or to avoid enforcement of an arbitration clause (*Turner, supra,* 175 Cal.App.4th at p. 980); an action seeking declaratory and injunctive relief and quiet title based on violations of the terms of a promissory note and deed of trust (*Kachlon, supra,* 168 Cal.App.4th at pp. 347–348); an unlawful detainer action based on a lessee's alleged breach of covenants in a lease (*Mitchell, supra,* 158 Cal.App.4th at p. 490); a conversion action based on breach of a safe deposit box contract (*Mustachio v. Great Western Bank* (1996) 48 Cal.App.4th 1145, 1151 [56 Cal.Rptr.2d 33]); and an action for reformation of a contract (*Wong v. Davidian* (1988) 206 Cal.App.3d 264, 270 [253 Cal.Rptr. 675]).

In contrast, courts have held the phrase "action on a contract" as used in section 1717 does *not* include an action asserting only tort claims (*Santisas, supra,* 17 Cal.4th at p. 617); a tort action for fraud arising out of a contract (*Stout v. Turney* (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228]); an action including a claim labeled breach of contract but not seeking to enforce anyone's rights under the only contract containing an attorney fees clause (*Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 435–436 [117 Cal.Rptr.3d 19] (*Hyduke's*)); an unjust enrichment cause of action (*Dintino, supra,* 167 Cal.App.4th at p. 358); an action on a contract that does not contain an attorney fees provision (*Brittalia Ventures v. Stuke Nursery Co., Inc.* (2007) 153 Cal.App.4th 17, 31 [62 Cal.Rptr.3d 467]); an unlawful detainer action based on tortious holding over after expiration of a lease (*Drybread v. Chipain Chiropractic Corp.* (2007) 151 Cal.App.4th 1063, 1077 [60 Cal.Rptr.3d 580]); an action against an attorney for professional negligence (*Loube v. Loube* (1998) 64 Cal.App.4th 421, 430 [74 Cal.Rptr.2d 906]); or an action to enforce a judgment obtained for breach of a promissory note (*Hambrose Reserve, Ltd. v. Faitz* (1992) 9 Cal.App.4th 129, 132 [11 Cal.Rptr.2d 638], disapproved on unrelated grounds in *Trope v. Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259]).

Based on our review of cases applying section 1717, we agree with our colleagues in Division Three that " '[i]t is difficult to draw definitively from case law any general rule regarding what actions and causes of action will be deemed to be "on a contract" for purposes of [section] 1717.' " (*Hyduke's, supra,* 189 Cal.App.4th at p. 435.) Nevertheless, we distill from the cases cited above the following principle: An action (or cause of action) is "on a

contract" for purposes of section 1717 if (1) the action (or cause of action) "involves" an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause.

Barnhart's claim for breach of contract obviously meets these requirements: In that claim, Barnhart sought damages based on CMC's failure to perform the decorative metalwork for the price specified in its November 5, 2005 bid, and the bid contains an attorney fees clause. Similarly, Barnhart's claim for recovery against CMC's contractor's bond was "on a contract": In that claim, Barnhart alleged CMC's "willful failure to prosecute work with reasonable diligence caus[ed] material injury to Barnhart *and breach of the CMC Subcontract.*" (Italics added.) The "CMC Subcontract," we have explained (see pt. II.A., *ante*), was just another name for CMC's November 5, 2005 bid, which contains an attorney fees clause. Barnhart's promissory estoppel claim, however, does not satisfy the first requirement for being "on a contract" listed above because, as we shall explain, such a claim does not "involve" an agreement.

■ Under the doctrine of promissory estoppel, a " 'promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 6 [151 Cal.Rptr. 323, 587 P.2d 1136] (*C & K Engineering*).) "Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310 [96 Cal.Rptr.2d 747, 1 P.3d 63] (*Kajima*).) "The purpose of this doctrine is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249 [74 Cal.Rptr. 398, 449 P.2d 462].) Such consideration, however, "is essential to the existence of a contract." (§ 1550, item 4.) Hence, *"promissory estoppel is distinct from contract* in that the promisee's justifiable and detrimental reliance on the promise is regarded as a substitute for the consideration required as an element of an enforceable contract." (*Signal Hill Aviation Co. v. Stroppe* (1979) 96 Cal.App.3d 627, 640 [158 Cal.Rptr. 178], italics added.)

■ A promissory estoppel claim also lacks another essential element of a contract claim: the parties' consent. (§ 1550, item 2.) Contract formation requires the parties' mutual assent, i.e., their "agree[ment] upon the same

thing in the same sense." (§ 1580; see *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270 [109 Cal.Rptr.2d 807, 27 P.3d 702].) "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." (*Donovan*, at pp. 270–271.) "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 [71 Cal.Rptr.2d 265].) In contrast, we have held the lack of mutual assent is "immaterial" to the resolution of a promissory estoppel claim, because "the doctrine of promissory estoppel is not premised upon the existence of an enforceable contract." (*H. W. Stanfield Constr. Corp. v. Robert McMullan & Son, Inc.* (1971) 14 Cal.App.3d 848, 853 [92 Cal.Rptr. 669] (*Stanfield*).) Thus, unlike contract law, which enforces promises because the parties have bargained for and agreed to be bound by them, promissory estoppel is an "alternative theory of recovery" that enforces promises because the promisee has justifiably and foreseeably relied on the promise and equity demands enforcement to avoid injustice. (*Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 275 [137 Cal.Rptr. 855].)

Based on these significant differences between contract and promissory estoppel claims, our Supreme Court repeatedly has recognized the claims not only as distinct or alternative theories of recovery but also as mutually exclusive. For example, in *Kajima, supra*, 23 Cal.4th 305, the plaintiff (Kajima) sought lost profits from a public entity defendant (MTA) under a theory of promissory estoppel, and argued such profits should be recoverable because "a contract between a public entity and a private party is governed by the same laws that apply to a contract between private parties." (*Id.* at p. 317.) The Supreme Court acknowledged the two types of contracts "may be" governed by the same laws, but rejected the argument because ". . . *Kajima does not have a contract with MTA.* Rather, it may recover damages solely under the equitable doctrine of promissory estoppel." (*Ibid.*, italics added.) The Supreme Court also held an action for promissory estoppel is not an action at law for breach of contract in which a right to jury trial exists. (*C & K Engineering, supra*, 23 Cal.3d at pp. 8–11.) The court reasoned: "[T]he trier of fact is called upon to determine whether 'injustice can be avoided only by enforcement of [defendant's] promise.' [Citation.] The 'gist' of such an action is equitable. Both historically and functionally, the task of weighing such equitable considerations is to be performed by the trial court, not the jury." (*Id.* at p. 11.) Lastly, based on the different nature of contract and promissory estoppel claims, the Supreme Court rejected a promissory estoppel claim when the promisor had requested the promisee's performance at the time the promise was made: "where the promisee's reliance was bargained for, the law of consideration applies; and it is only where the

reliance was unbargained for that there is room for application of the doctrine of promissory estoppel." (*Healy v. Brewster* (1963) 59 Cal.2d 455, 463 [30 Cal.Rptr. 129, 380 P.2d 817].)

The Courts of Appeal likewise have treated promissory estoppel and contract claims as fundamentally different. For example, our colleagues in Division Three rejected as "superfluous" a promissory estoppel claim when the plaintiff also sued for breach of contract and "adequate consideration existed." (*Money Store Investment Corp. v. Southern Cal. Bank* (2002) 98 Cal.App.4th 722, 732 [120 Cal.Rptr.2d 58].) Recently, the First District similarly held that "a plaintiff cannot state a claim for promissory estoppel when the promise was given in return for proper consideration. The claim instead must be pleaded as one for breach of the bargained-for contract." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 275 [129 Cal.Rptr.3d 467].) And, more than two decades ago we defined the doctrine of promissory estoppel and then immediately stated: "It can be seen that the doctrine creates only an enforceable promise, *not a contract*, since the promisee is not obligated to act or forebear and the promisor has no enforceable contract." (*A-C Co. v. Security Pacific Nat. Bank* (1985) 173 Cal.App.3d 462, 472 [219 Cal.Rptr. 62], italics added.) Promissory estoppel, we said, is "a *'peculiarly equitable doctrine.'* " (*Ibid.*; see *Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 693 [21 Cal.Rptr.3d 732] [noting "equitable underpinnings" and "equitable nature" of promissory estoppel].)

The California appellate cases thus clearly indicate that a promissory estoppel claim is based on equitable principles, not on a contract. Because the basis of a claim is the proper focus in determining whether the claim is "on a contract" for purposes of section 1717 (*Kachlon, supra*, 168 Cal.App.4th at p. 347), promissory estoppel does not qualify as such a claim.

Supportive of the conclusion that a promissory estoppel claim is not a claim "on a contract" within the meaning of section 1717 are decisions from other states holding that a party prevailing on a promissory estoppel claim may not recover attorney fees under statutes worded similarly to section 1717. For example, an Arizona statute authorizing the "successful party" in "any contested action arising out of a contract, express or implied," to recover "reasonable attorney fees" (Ariz. Rev. Stat. § 12-341.01.A) was held not to apply to a party prevailing on a theory of promissory estoppel. (*Double AA Builders, Ltd. v. Grand State Construction L.L.C.* (2005) 210 Ariz. 503, 511 [114 P.3d 835, 843].) The court explained: "A promissory estoppel claim is not the same as a contract claim. Promissory estoppel provides an equitable remedy and is not a theory of contract liability. [Citations.] Although a promise made enforceable by promissory estoppel is similar to a binding contractual promise, a promissory estoppel claim does not arise out of a contract." (*Ibid.*)

Similarly, a party that prevailed on a promissory estoppel claim could not recover under a Texas statute that "allows a party to recover its 'reasonable attorney's fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.'" (*Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.* (Tex.App. 2004) 154 S.W.3d 634, 636 (*Doctors Hosp. 1997*).)[2] The court observed that under the statute "the party seeking attorney's fees must first prevail on a valid contract claim," and that "promissory estoppel becomes available to a claimant only in the *absence* of a valid and enforceable contract." (154 S.W.3d at p. 636.) The court thus concluded: "The plain language of [the statute] allows the court to award attorney's fees only when a party has a valid oral or written contract claim. [Citation.] When a party recovers on a promissory estoppel claim, it does not have a valid contract claim." (154 S.W.3d at p. 639.)

In a case involving a lease containing an attorney fees provision but no statute authorizing an award of attorney fees, a Washington appellate court rejected a claim for an award of attorney fees incurred in defeating a promissory estoppel claim. (*Tradewell Group, Inc. v. Mavis* (1993) 71 Wash.App. 120, 130 [857 P.2d 1053, 1058].) The court held that an "action is on a contract for purposes of a contractual attorney fees provision if the action arose out of the contract and if the contract is central to the dispute. [Citations.] . . . The promissory estoppel claim does not arise out of the lease . . . since estoppel, by its very nature, is an alternative theory of liability based on the *absence of an express agreement.*" The court therefore held the attorney fees award was properly limited to the fees incurred in defeating the contract-based claims. (*Ibid.*)

The inherent differences between promissory estoppel and contract claims recognized in the case law also justify differential treatment of the claims under section 1717, because a promise sought to be enforced on the basis of promissory estoppel, rather than contract, does not raise the policy concerns underlying section 1717. Section 1717 was originally enacted to make one-sided attorney fees clauses reciprocal in order to prevent parties with stronger bargaining power from oppressing weaker parties by inserting into

---

[2] More recent opinions from the Texas Court of Appeals have split on the issue of the recoverability of attorney fees in promissory estoppel cases. In *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.* (Tex.App. 2012) ___ S.W.3d ___, ___, footnote 9 [2012 Tex.App. Lexis 8612, *60, footnote 9], the court followed *Doctors Hosp. 1997, supra,* 154 S.W.3d 634, without further analysis. In *Corpus Christi Day Cruise, LLC v. Christus Spohn Health System Corp.* (Tex.App. 2012) ___ S.W.3d ___, ___ [2012 Tex.App. Lexis 5343, *29], the court disagreed with *Doctors Hosp. 1997* and held the statute did authorize an award of attorney fees to a party that prevailed on a promissory estoppel claim. The opinion contains no analysis of the issue; it simply follows an earlier federal appellate decision that had applied a prior version of the Texas statute. We note that as of the date of this opinion, neither of the more recent Texas opinions has been released for publication, and both are subject to modification.

contracts one-sided clauses, which would allow the stronger parties to collect contract damages *and* attorney fees if they prevailed in litigation but pay only contract damages if they lost. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1090–1091 [95 Cal.Rptr.2d 198, 997 P.2d 511] (*PLCM Group*); *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1187–1188 [101 Cal.Rptr.2d 532].) The statute was subsequently amended to extend to reciprocal attorney fees clauses as well as one-sided clauses, in order to establish uniform treatment of fee recoveries in all actions on contracts containing attorney fees clauses and to eliminate distinctions based upon whether fee recovery is statutory or contractual. (*PLCM Group*, at p. 1091.) Concerns over relative bargaining power and uniform treatment of contractual provisions obviously arise only when the parties (at least allegedly) have bargained for and consented to a contract that contains an attorney fees clause. Issues of bargaining and consent are "immaterial" to a claim of promissory estoppel, however. (*Stanfield, supra*, 14 Cal.App.3d at p. 853.) Such claims, therefore, do not implicate section 1717.

■ For all of the reasons stated above, we hold a claim for promissory estoppel does not "involve" a contract and, therefore, is not a claim "on a contract" within the meaning of section 1717, subdivision (a). We further hold a plaintiff who prevails on a promissory estoppel claim but recovers nothing on a breach of contract claim (or other claim "involving" a contract) in the same action is not "the party prevailing on the contract" entitled to recover under the attorney fees clause in the alleged contract. (§ 1717, subd. (a).) Instead, the defendant who defeats the breach of contract claim (or other claim "involving" a contract) but loses on the promissory estoppel claim is "the party prevailing on the contract" entitled to recover under the attorney fees clause in the alleged contract. (*Ibid.*)

Barnhart nevertheless argues we should consider it the prevailing party for purposes of section 1717 because it "prevailed on its promissory estoppel claim, which was contractual in nature, and therefore recovered a greater relief in the action on the contract." Citing language from several Court of Appeal opinions and the Restatement Second of Contracts, Barnhart asserts that generally "claims for promissory estoppel should be considered based on contract." Barnhart then asserts its particular promissory estoppel claim "was contractual in nature" because that claim, like its companion breach of contract claim, was based on CMC's promise to do the decorative metalwork for the library construction project for the price stated in CMC's November 5, 2005 bid. From these premises, Barnhart concludes it was "the party prevailing on the contract" (§ 1717, subd. (a)), because a comparison of the results of the breach of contract and promissory estoppel claims indicates Barnhart "recovered a greater relief in the action on the contract" (*id.*, subd. (b)(1)). We are not persuaded.

Barnhart correctly points out that California appellate courts repeatedly have described promissory estoppel claims as *akin to* contract claims. For example, in holding a plaintiff asserting a promissory estoppel claim must prove the defendant caused the plaintiff's damages, this court wrote: "Cases have characterized promissory estoppel claims as being basically the same as contract actions, but only missing the consideration element . . . ." (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 903 [28 Cal.Rptr.3d 894] (*US Ecology*).)[3] Our colleagues in the Second District repeated this statement without elaboration in holding a plaintiff had not pleaded facts sufficient to show a promise on which reliance was reasonable. (*Yari v. Producers Guild of America, Inc.* (2008) 161 Cal.App.4th 172, 182 [73 Cal.Rptr.3d 803].) In the other cases cited by Barnhart, appellate courts simply described promissory estoppel claims as a type of breach of contract claim or as involving contract principles without any discussion of the matter. (See, e.g., *Cooper v. State Farm Mutual Automobile Ins. Co.* (2009) 177 Cal.App.4th 876, 892 [99 Cal.Rptr.3d 870] ["Whether based on a contract principle of promissory estoppel or a tort theory"], 895 [plaintiff "set forth sufficient evidence of the breach of contract (promissory estoppel) cause of action"]; *Swinerton & Walberg Co. v. City of Inglewood-L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 101 [114 Cal.Rptr. 834] [referring to promissory estoppel claim as a claim "in contract"], 104 [describing promissory estoppel as resulting in "an informal contract"].)[4]

---

[3] The question in *US Ecology, supra*, 129 Cal.App.4th 887, was "whether a plaintiff pursuing a claim for promissory estoppel must prove that the defendant on that claim caused the plaintiff's damages." (*Id.* at p. 891.) We held that "as in ordinary contract actions, a plaintiff seeking recovery on a promissory estoppel theory must prove that the defendant's breach was a substantial factor in causing the plaintiff's damages." (*Ibid.*) In support of this holding, we stated that "[c]ases have characterized promissory estoppel claims as being basically the same as contract actions, but only missing the consideration element, and therefore the damages recoverable logically are, like in a contract case, limited to those caused by the breaching party." (*Id.* at p. 903.) We further explained that "because promissory estoppel claims are aimed solely at allowing recovery in equity where a contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract, it is logical and proper to require that any claimed damages be caused by a defendant's breach of the agreement. Because promissory estoppel is viewed as an 'informal contract,' causation must be required as an element that a plaintiff must prove, just as in ordinary contract actions." (*Id.* at p. 904.) That a promissory estoppel claim may be so "akin to" a contract claim that imposition of the same causation requirements is "logical and proper" does not mean a promissory estoppel claim is a claim "on a contract" for purposes of recovery of attorney fees under section 1717, however.

[4] Barnhart also points out that in distinguishing between contract and tort claims, we stated: "If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious." (*Arthur L. Sachs, Inc. v. City of Oceanside* (1984) 151 Cal.App.3d 315, 322 [198 Cal.Rptr. 483].) From this statement, Barnhart contends its promissory estoppel claim was contractual because it was based on CMC's promise to perform the decorative metalwork in accordance with the terms of its November 5, 2005 bid. *Sachs*, however, did not involve a promissory estoppel claim; it involved a claim seeking restitution and rescission of a written

■ The cases on which Barnhart relies stand at most for the proposition that because promissory estoppel claims bear some similarities to breach of contract claims (e.g., both involve a promise), the claims may appropriately be treated similarly for some purposes (e.g., pleading requirements). Those cases do not hold the two types of claims are identical or should be treated the same *for all purposes*. And, most importantly, none of the cases cited by Barnhart considered whether a promissory estoppel claim was "on a contract" for purposes of section 1717. Hence, those cases are not authority on that issue. (E.g., *Santisas, supra,* 17 Cal.4th at p. 620 [cases are authority only for points actually involved and decided].)

As additional support for the contention its promissory estoppel claim was based on contract, Barnhart relies on the Restatement Second of Contracts. In particular, Barnhart quotes the following sentence contained in a comment to section 90 of the Restatement, which defines promissory estoppel: "*A promise binding under this section is a contract,* and full-scale enforcement by normal remedies is often appropriate." (Rest.2d Contracts, § 90, com. d, p. 244, italics added.) The immediately following sentences, however, qualify this seemingly absolute statement: "But the same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. In particular, *relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise.*" (*Ibid.,* italics added.) If a promise made enforceable by the doctrine of promissory estoppel were *in all cases and for all purposes* a contract, then the measure of damages could not be so limited, because when a contract is breached "[t]he aim is to put the injured party in as good a position as he would have been *had performance been rendered as promised.*" (*Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 455 [277 Cal.Rptr. 40], italics added.) Accordingly, the point of comment d, when read in its entirety, is *not* that a promise enforceable under the doctrine of promissory estoppel is *in all cases and for all purposes* to be treated as a contract; rather, the point is that *in some cases* it may be appropriate to treat such a promise as a contract *for the purpose of fashioning an appropriate remedy.*

In any event, although the California Supreme Court has adopted the doctrine of promissory estoppel as defined in section 90 of the Restatement Second of Contracts (*Kajima, supra,* 23 Cal.4th at p. 310; *Drennan v. Star Paving Co.* (1958) 51 Cal.2d 409, 413 [333 P.2d 757]), it has rejected the notion that a "promise binding under this section is a contract" (Rest.2d Contracts, § 90, com. d, p. 244). As we explained earlier, both our Supreme

---

contract on grounds of mistake and fraud. Because the promises there involved were clearly contractual, *Sachs* does not support Barnhart's contention that the promise underlying its promissory estoppel claim was contractual.

Court and the Courts of Appeal have held that a promise enforceable under the doctrine of promissory estoppel is *not* a contract. (See pp. 243–245, *ante*.) Indeed, our Supreme Court has explained that "[p]romissory estoppel was developed to do rough justice when a party *lacking contractual protection* relied on another's promise to its detriment." (*Kajima*, at p. 315, italics added.) Thus, to the extent comment d to section 90 of the Restatement Second of Contracts suggests a promise enforceable under the doctrine of promissory estoppel constitutes a contract in all cases and for all purposes, we reject the suggestion as inconsistent with California law.

In sum, Barnhart's promissory estoppel claim was *not* a claim "on a contract." (§ 1717, subd. (a).) Its success on that claim is therefore irrelevant to the prevailing party determination under section 1717, and the trial court erred in determining Barnhart was the prevailing party on that basis. (*Frog Creek, supra*, 206 Cal.App.4th at p. 531; *Dintino, supra*, 167 Cal.App.4th at p. 358.) Rather, having defeated Barnhart's only contract claims in the action (i.e., the breach of contract and contractor's bond claims), CMC "is the party prevailing on the contract under section 1717 *as a matter of law*." (*Hsu, supra*, 9 Cal.4th at p. 876, italics added.) CMC therefore has a right to recover the attorney fees it reasonably incurred in defeating those claims, and the trial court had no authority to deny entirely its request for fees. (§ 1717, subd. (a); *Hsu*, at p. 877; *Zintel Holdings, supra*, 209 Cal.App.4th at p. 440.)

C. *Remand Is Required to Allow the Trial Court to Award CMC a Reasonable Amount of Attorney Fees*

CMC requests that we direct the trial court on remand to award CMC all of its requested attorney fees. We decline to do so.

CMC is not necessarily entitled to recover all its requested attorney fees. In an action on a contract, "the party prevailing on the contract . . . shall be entitled to *reasonable* attorney's fees . . . ." (§ 1717, subd. (a), italics added.) The trial court must fix a reasonable amount of attorney fees, and it has broad discretion in determining that amount. (*Ibid.*; *PLCM Group, supra*, 22 Cal.4th at p. 1095.) The court must determine the number of hours reasonably expended on the case and a reasonable hourly rate for the work. (*PLCM Group*, at p. 1095.) Further, the court may have to apportion attorney fees among the claims because CMC prevailed only on the contract claims (breach of contract and contractor's bond) and therefore is entitled to recover only the attorney fees reasonably incurred in its successful defense of those claims. (See, e.g., *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83] (*Reynolds*); *Zintel Holdings, supra*, 209

Cal.App.4th at p. 443; *Dintino, supra,* 167 Cal.App.4th at p. 358; *Erickson v. R.E.M. Concepts, Inc.* (2005) 126 Cal.App.4th 1073, 1083 [25 Cal.Rptr.3d 39].) Because the "trial court, having heard the entire case, [is] in the best position to determine whether any . . . allocation of attorney fees [is] required," we remand for the court to exercise its discretion in that regard. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 556 [66 Cal.Rptr.3d 175]; see *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 692 [98 Cal.Rptr.2d 263] (*Bell*).)

For the guidance of the trial court on remand, we note that "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds, supra,* 25 Cal.3d at pp. 129–130.) "Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Bell, supra,* 82 Cal.App.4th at p. 687.) Attorney fees also "need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories." (*Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493 [209 Cal.Rptr. 623].) Thus, to the extent CMC defended against factual or legal issues common to Barnhart's contract and noncontract claims, it is entitled to recover the attorney fees incurred in defense against those issues, but CMC is not entitled to the fees incurred in defending against factual or legal issues unique to Barnhart's noncontract claim (promissory estoppel).

Finally, CMC has requested an award of attorney fees incurred on appeal. When a contract or a statute authorizes the prevailing party to recover attorney fees, that party is entitled to attorney fees incurred at trial and on appeal. (*Wilson v. Wilson* (1960) 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725]; *Frog Creek, supra,* 206 Cal.App.4th at p. 547.) On remand, therefore, the trial court shall determine the amount of attorney fees reasonably incurred in prosecuting this appeal, and include that amount in its order awarding CMC fees. (*Frog Creek,* at p. 547; *Dintino, supra,* 167 Cal.App.4th at p. 358.)

## DISPOSITION

The order denying CMC's motion for an award of attorney fees is reversed. The matter is remanded to the trial court to conduct further proceedings consistent with this opinion, to determine the amount of attorney

fees CMC reasonably incurred in defending against Barnhart's contract claims at trial and in prosecuting this appeal, and to enter an order awarding CMC that amount.

Benke, Acting P. J., and Haller, J., concurred.

A petition for a rehearing was denied December 7, 2012, and respondent's petition for review by the Supreme Court was denied January 30, 2013, S207556.