Filed 1/20/22  Vakili v. Bank of America, N.A. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| HALEH VAKILI, | C091767 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2017-00208676-CU-OR-GDS) |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant and Respondent. | |

This case arises from defendant Bank of America, N.A.'s (BANA) mishandling of plaintiff Haleh Vakili's (Vakili) loan modification application.  After a jury found BANA liable for negligence and fraud, Vakili moved for attorney fees under Civil Code section 1717,[1] arguing that certain loan documents contained clauses that provided grounds for recovery of fees.  The trial court denied the motion, finding Vakili prevailed on tort

---

[1]  Undesignated references are to the Civil Code.

1

claims that did not trigger the reciprocity provisions of section 1717 because her claims were not "on a contract" and did not fall within the fee provisions in the loan documents. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual history*[2]

In 2011, Vakili and her then-husband, William Welcher, purchased a home in Carmichael, California (the property). To do so, they secured a loan for $566,752. The purchase was memorialized in a promissory note (the note) and secured by a deed of trust (deed) (together, the loan documents). Vakili signed both the note and deed with the name Haleh Welcher. In 2013, Vakili and Welcher divorced, and the property was ceded to Vakili via quitclaim deed. Vakili defaulted on the loan in July 2015. In December 2015, Vakili submitted a request for mortgage assistance to BANA through a federal loan modification program.

In November 2016, BANA sent Vakili a permanent loan modification offer, but the offer included both Vakili and Welcher as signatories and required both their signatures for the modification to take effect. It also identified Vakili by her former spouse's surname, Haleh Welcher, rather than as Haleh Vakili. In December 2016, after Vakili objected to these issues, BANA represented that it would send Vakili modified documents. Instead, it referred Vakili's application to the bank's mortgage fraud prevention unit, which began an investigation to determine whether William Welcher's signature had been forged on the application. BANA concluded the signature was fake, denied the loan modification, and placed Vakili on a watch list preventing her from applying for another loan modification for a year. However, BANA did not tell Vakili about its investigation, its conclusion, or her possible remedies.

---

[2]    The following facts are drawn from the pleadings, briefs, and rulings in the record.

B.      *Procedural background*

On March 1, 2017, Vakili filed a complaint against BANA alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, negligence, and fraud.  The case proceeded to a jury trial. Following presentation of the evidence, the trial court granted BANA's motion for directed verdict on Vakili's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as her prayer for punitive damages.  It also granted a directed verdict on one of Vakili's two claims of fraud.  The trial court permitted the jury to decide Vakili's negligence claim, which arose from BANA's handling of Vakili's loan modification application, and Vakili's remaining allegation of fraud, based on BANA's December 2016 representation that it would send Vakili a corrected loan modification application.

The jury found BANA liable for negligence and fraud and awarded Vakili $3.46 million in damages.  The trial court resolved the promissory estoppel claim in BANA's favor.  After the trial court conditionally granted BANA's motion for new trial under Code of Civil Procedure section 662.5, Vakili accepted a reduced judgment of $1,700,869 on her negligence and fraud claims and dismissed the remaining causes of action with prejudice.  Vakili then moved for $1.9 million in contractual attorney fees under section 1717, which the trial court denied.  Vakili timely appealed the order denying fees.

DISCUSSION

I

*The Trial Court's Ruling*

In her motion for attorney fees, Vakili argued that she was entitled to fees based on provisions in the deed and the note.  Because those provisions permitted only BANA to recover fees, Vakili argued that section 1717 applied to make the fee provisions reciprocal because her action was "on a contract."

3

The trial court denied the motion, finding that Vakili's tort claims did not require enforcement or interpretation of the note or deed, and thus were not "on a contract" for purposes of section 1717. It reasoned that Vakili's claims instead "arose from allegations that BANA wrongfully denied an application for a loan modification that would have altered the terms of the underlying contract." The trial court further acknowledged that parties may theoretically agree to an attorney fees provision that applies to tort claims, but here, no evidence of such an agreement existed.

II

*Analysis*

Vakili argues the trial court erred in finding that her claims fell outside the fee provisions in the loan documents and were not "on a contract." She insists that case law does not create a "brightline rule" precluding all tort claims from recovery under section 1717, but rather it requires us to liberally construe her tort claims to determine whether they are "on a contract." So construed, Vakili contends her claims relate to the enforcement of the loan documents and therefore are covered by the fee provisions and trigger reciprocity under section 1717.

A.      *The appellate record and standard of review*

At the outset, we observe that Vakili has elected to include only select documents in her appellate appendix, along with a transcript of the hearing on the fee motion.[3] Vakili's appeal may proceed on this limited record. However, we conclusively presume evidence was presented at trial that is sufficient to support the court's substantive findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Further, the trial court's

---

[3]      BANA argues that the record is inadequate because the nature of Vakili's fraud and negligence claims cannot be determined without reviewing the theories advanced and evidence presented at trial. However, we find the record adequate for our review and perceive no prejudice to BANA.

4

conclusions are binding upon us unless error appears on the face of the record.  (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.)  We review the trial court's denial of attorney fees de novo, as a question of law and statutory construction. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

      B.    *Legal standard*

California follows the " 'American rule,' " under which each party to a lawsuit must pay its own attorney fees unless a contract or statute or other law authorizes a fee award.  (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516; Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10).)  "Section 1717 is the applicable statute when determining whether and how attorney's fees should be awarded under a contract . . . ."  (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1157.)  Section 1717, subdivision (a) provides:  "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Thus, "section 1717 has a limited application.  It covers *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract.  Its only effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract."  (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342, original italics.)

To determine whether section 1717 applies, courts must consider whether an action is "on the contract."  (§ 1717, subd. (b)(1).)  " 'California courts construe the term "on a contract" liberally.'  [Citation.]  The phrase 'action on a contract' includes not only a traditional action for damages for breach of a contract containing an attorney fees clause [citation], but also any other action that 'involves' a contract under which one of

5

the parties would be entitled to recover attorney fees if it prevails in the action [citation].” (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 240 (*Barnhart*).) “In determining whether an action is ‘on the contract’ under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action. [Citation.]” (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347.)

The Fourth District Court of Appeal observed that “ ‘[i]t is difficult to draw definitively from case law any general rule regarding what actions and causes of action will be deemed to be “on a contract” for purposes of [section] 1717.’ ” (*Barnhart, supra*, 211 Cal.App.4th at p. 241, quoting *Hyduke’s Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 435.) The court in *Barnhart* did, however, distill some guiding principles, explaining that “[a]n action (or cause of action) is ‘on a contract’ for purposes of section 1717 if (1) the action (or cause of action) ‘involves’ an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party’s rights or duties under the agreement, and (2) the agreement contains an attorney fees clause.” (*Barnhart*, at pp. 241-242.)

Although the phrase “on a contract” must be liberally construed, section 1717 does not extend to claims sounding in tort. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 615; *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708; *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 408.) “This distinction between contract and tort claims flows from the fact that a tort claim is not ‘on a contract’ and is therefore outside the ambit of section 1717. [Citations].” (*Exxess Electronixx, supra*, 64 Cal.App.4th at p. 708.) Even if the parties have a contractual relationship, a tort action for fraud arising out of a contract is not an action on a contract within the meaning of section 1717. (*Stout v. Turney* (1978) 22 Cal.3d 718, 730.) Similarly, a tort action for negligence arising from a contractual relationship does not fall within its provisions. (See *Loube v. Loube* (1998) 64 Cal.App.4th 421, 429-430 [legal malpractice claim not “on a

6

contract" under section 1717 though relationship defined by contract]; *Lafferty v. Wells Fargo Bank, N.A.* (2018) 25 Cal.App.5th 398, 418 [plaintiff not entitled to fees under section 1717 for negligence claim despite privity of contract between parties]; *Moallem v. Coldwell Banker Com. Group, Inc*. (1994) 25 Cal.App.4th 1827, 1830 [section 1717 inapplicable to negligence claim alleged in connection with purchase of real estate]; *Plemon v. Nelson* (1983) 148 Cal.App.3d 720, 724 [no fee award under section 1717 for negligence claim based on tort principles despite underlying rental agreement].)

        C.      *Attorney fee provisions*

"Before section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees and, if so, the scope of the attorney fee agreement." (*Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 990.) A prevailing party on a contract is only entitled to mutuality of remedy under section 1717 if the nonprevailing party would have recovered attorney fees under the contract had it prevailed. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870-871.)

Vakili's claim to fees rests on two unilateral contract provisions; one in the note, the other in the deed. Neither clause applies to fraud or negligence claims.

First, paragraph 6, subparagraph (C) of the note provides, under the "BORROWER'S FAILURE TO PAY" section: "If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees *for enforcing this Note* to the extent not prohibited by applicable law." (Italics added.) This provision thus allows BANA to recover attorney fees if Vakili went into default and BANA had to exercise its contractual right to accelerate payment or foreclose on the property. In other words, it is limited to BANA's pursuit of contractual remedies to enforce the note in the event of Vakili's failure to make payments on the loan. It does not encompass allegations of negligence or fraud arising from a loan modification, as those are wholly unrelated to

7

BANA's pursuit of contractual remedies in the event of default. We therefore find this fee provision inapplicable to Vakili's claims.

Vakili also relies upon paragraph 7 of the deed, which states, in relevant part: "If . . . there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the property and Lenders [*sic*] rights in the Property, including payment of taxes, hazard insurance and other [escrow items]. [¶] Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. . . ."

As a threshold matter, we agree with the trial court that this provision in the deed is not a traditional fee recovery clause. Instead, it confers on BANA the right to recover expenses (including attorney fees) it incurs to protect its interest in the property as against third parties. The provision does not purport to cover tort claims brought by or against BANA. Indeed, courts have found that similar contractual terms "do not authorize a separate fee award and instead only allow the fees to be added [as expenses incurred by the lender] to the outstanding balance due under the promissory note." (*Chacker v. JPMorgan Chase Bank, N.A.* (2018) 27 Cal.App.5th 351, 358; *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322, 327-329.) In any event, this clause does not cover the tort causes of action on which Vakili prevailed.

In sum, there is no indication in the text of either provision that they were meant to extend to negligence or fraud claims arising from a loan modification between Vakili and BANA. Even if BANA had prevailed on these claims, it would have been unable to recover fees under the terms of the note or the deed. Section 1717, which serves only to establish mutuality of remedy by transforming one-sided attorney fee provisions into

8

reciprocal provisions, is therefore inapplicable here, and Vakili cannot recover her attorney fees under the statute.**4**

D.     *Section 1717's "on a contract" requirement*

Vakili insists that despite fashioning her claims as causes of action for fraud and negligence, which as discussed above are facially ineligible for fees under the fee provisions and section 1717, a thorough review of her allegations and a liberal construction of section 1717 will reveal that her claims are *actually* "on a contract" because they sought to enforce, interpret, and define the loan documents. We find no merit to this contention.

1.     *Negligence cause of action*

A claim based on a breach of a noncontractual duty is a tortious action rather than a contractual one. (*Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178.) " '[T]ort claims do not "enforce" a contract' and are not considered actions on a contract for purposes of section 1717. [Citation.]" (*Kangarlou, supra*, at p. 1178.)

Here, Vakili's cause of action for negligence asserted that BANA agreed to review Vakili for a loan modification yet failed to correct her name in its system and wrongly denied her application. Accordingly, Vakili alleged that BANA owed Vakili a duty in tort, arising from BANA's agreement to assess Vakili's application, and not from any contractual obligation or right found in the loan documents.

Indeed, in earlier rulings in the case, the trial court relied on *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941 to find that Vakili's negligence claim alleged that BANA owed her "a duty *in tort*." (Italics added.) In *Alvarez*, the appellate court concluded that mortgage lenders owe homeowners a duty of care when reviewing

---

**4**     Vakili's opening brief also cites to a fee provision in paragraph 18 of the deed. However, on reply, Vakili concedes that this provision applies only when a foreclosure occurs and is thus inapplicable to Vakili's claims.

their loan modification applications once they have agreed to do so, as it is foreseeable that failure to timely and carefully assess the application will cause the homeowners harm. (*Id.* at pp. 948-950.) Thus, *Alvarez* found that the lender's duty to a borrower in the loan modification process was based in tort, as it arose from its agreement to consider modification of the homeowner's loans and relevant federal guidelines. (*Id.* at pp. 944-945, 948-949.) It did not find that the lender's duty or the homeowners' rights arose from its obligations in the deed or the note, nor did it analyze the terms of those documents or enforce them to determine whether a duty was owed. (*Ibid.*)

Here, as in *Alvarez,* BANA's duty to use reasonable care when assessing Vakili's loan modification was a noncontractual duty arising from its agreement to consider Vakili's modification request, consistent with a claim sounding in tort. This renders Vakili's claims distinguishable from those in *Yoon v. Cam IX Trust* (2021) 60 Cal.App.5th 388, relied on extensively by Vakili, in which the plaintiff's tort claims expressly arose from the defendant's obligations in the note and deed of trust. (*Yoon, supra*, at p. 393.) Further, although Vakili insists that the trial court interpreted the deed and the note to determine whether BANA owed her a duty of care, Vakili provides no citations to the record that support this claim.[5] (Cal. Rules of Court, rule 8.204(a)(1)(C).) Similarly, Vakili points to no evidence showing the jury needed to interpret or enforce the loan documents in order to reach a verdict on Vakili's negligence claim.

### 2. *Fraud cause of action*

Vakili's claim for fraud alleged in relevant part that in December 2016, BANA falsely represented to Vakili that it would correct her name in the system and send her a

---

**5** Vakili's argument cites to the trial transcript, which is not part of the designated appellate record, and, in any event, does not mention the deed or the note. She further cites to the trial court's rulings on BANA's motion for summary judgment and motion for judgment on the verdict, neither of which rely on the deed or note to find BANA owed Vakili a duty of care.

10

revised loan modification application, and that Vakili relied on BANA's false promise to her detriment. A fraud claim sounds in tort regardless of whether the underlying transaction involved a contract with an attorney fees clause. (See *Orozco v. WPV San Jose, LLC, supra*, 36 Cal.App.5th at p. 408; *Loube v. Loube, supra*, 64 Cal.App.4th at p. 430.) Here, the jury had to determine whether Vakili detrimentally relied on BANA's oral misrepresentation that it would send her a corrected loan modification application. As with Vakili's negligence claim, this did not require the trial court or the jury to define or interpret the terms of the note or deed, or to determine or enforce the parties' rights or duties under those contracts. Thus, section 1717 is not triggered.

Rather than directly argue her fraud claim was "on a contract," Vakili instead asserts that her fraud claim was "inextricably intertwined" with her negligence claim, such that she is entitled to attorney fees on both. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 159.) As we conclude Vakili's negligence claim does not qualify for attorney fees under section 1717, we also reject the argument that she is entitled to fees because the claims are inextricably intertwined.

III

*BANA's Request for Fees*

In its responsive brief, BANA contends that *it* is entitled to attorney fees on appeal under section 1717 and paragraph 6(C) of the note because it prevailed on Vakili's claims for (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing on directed verdict. However, BANA did not seek attorney fees following the trial court's ruling on its motion for directed verdict, or at any time in the trial court, when it could have done so. Thus, it has forfeited any right to claim attorney fees. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [reviewing court will not ordinarily consider claims, arguments, authority and facts presented for the first time on appeal that could have been but were not presented to the trial court]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["[i]t is axiomatic that arguments

11

not asserted below are waived and will not be considered for the first time on appeal"]; *Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 558 [absence of fee award in the underlying judgment precludes the award of attorney fees on appeal].)

DISPOSITION

The judgment is affirmed.  BANA shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278, subd. (a)(1), (2).)


                                          KRAUSE        , J.


We concur:


      RAYE        , P. J.


      HULL        , J.